UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
NOV 3 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| AMANDA McMILLAN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) Civ. Action No. 05cv208 (RJL) | |
| DONALD POWELL, CHAIRMAN ) | |
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(November 25, 2007)[#19]

Amanda McMillan ("plaintiff" or "McMillan") has sued Donald Powell, the Chairman of the Federal Deposit Insurance Corporation ("FDIC"), alleging employment discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16 ("Title VII"). Currently before the Court is defendant's motion for summary judgment. For the following reasons, defendant's motion will be GRANTED.

**I. BACKGROUND**

McMillan, who is African-American, was hired by the FDIC as an "Examiner Trainee" in August 2001. Pl.'s Aff. ¶ 2.[1]  As a trainee, McMillan was required to fulfill a one-year probationary period, during which time she received extensive classroom and on-the-job training and was required to complete a self-directed study program.

---

[1] As an Examiner Trainee, plaintiff was required to fulfill a one-year probationary period before being offered full-time employment status.

1



Defendant's Motion for Summary Judgment ("Def.'s Mot."), p. 3. According to agency regulations, the FDIC could terminate McMillan at the end of her probationary period "if [she] fail[ed] to demonstrate fully [her] qualifications for continued employment." 5 C.F.R. § 315.803.

On August 9, 2002, at the conclusion of her probationary period, McMillan met with her superior Sean Blair ("Blair") to discuss her performance reviews. Pl.'s Aff. ¶ 9. At this meeting, Blair congratulated plaintiff on making it through the probationary period and welcomed her as a permanent employee. *Id.* He noted, however, that he was not approving a grade increase because of performance issues and was not recommending her for "Second School," the next step in training. Def.'s Mot. at 4.

On August 12, 2002, McMillan telephoned Blair and complained about what she perceived to be his negative attitude towards her performance. Pl.'s Aff. ¶ 10. Although plaintiff believed that Blair was receptive to her concerns, Pl's Aff. ¶ 10, on August 22, 2002, she was informed that she was not being retained beyond her probationary period. *See* Termination Letter, Attachment #25 to Def.'s Mot. Blair contends that he would have fired the plaintiff sooner, but that he mistakenly believed that he had to provide her 90 days notice of her dismissal and that he had missed the deadline. Blair Aff. ¶ 12.

In December 2002, McMillan filed a formal complaint with the EEOC alleging discrimination and retaliation for her complaints to Blair. She received a right to sue letter in November 2004. In January 2005 plaintiff filed suit in this Court alleging, in

essence, the same claims. Defendant has moved for summary judgment, arguing that McMillan was fired because of her poor performance. Upon review of the relevant caselaw and the entire record herein, defendant's motion will be GRANTED.

## II. ANALYSIS

Under Rule 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. *Id.* at 248. For the following reasons, the Court concludes that there is no genuine issue of material fact and defendant is, therefore, entitled to judgment as a matter of law.

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006).

In a suit brought pursuant to Title VII, a plaintiff may prove her claim of discrimination indirectly under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff-employee carries the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination. If the plaintiff can do so, the burden shifts to the defendant-employer to "articulate a legitimate, nondiscriminatory reason for its actions." *Stella v. Mineta*, 284 F.3d 135, 144 (D.C.Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant can provide such a reason, the burden shifts back to the plaintiff, who must then "demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory." *Id* (citing *McDonnell Douglas* at 804, 93 S.Ct. 1817). Unfortunately, McMillan has failed to make a *prima facie* case. How so?

## A. McMillan's Retaliation Claim

In order to establish a *prima facie* case of retaliation, McMillan must demonstrate: (1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." *Stewart v. Evans*, 275 F. 3d 1126, 1134 (D.C. Cir. 2002). According to Title VII, "protected activity" includes, *inter alia*, an employee's opposition to an unlawful employment practice. 42 U.S.C. § 2000e-3(a); *Burton v. Batista*, 339 F.Supp.2d 97, 114 (D.D.C. 2004). "While no 'magic words' are required" to mark an exchange as protected

activity, the employee "must in some way allege unlawful discrimination." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C.Cir. 2006).

Here, McMillan complained to Blair about his negative attitude towards her performance during their August 9, 2002 meeting. A negative attitude, however, does not an unlawful employment practice make. As the Supreme Court itself noted, the retaliation provision of Title VII is intended to prohibit employer actions that are likely "to deter victims of discrimination from complaining to the EEOC." *Burlington Northern & Santa Fe Railroad Co. v. White*, 126 S.Ct. 2405, 2415 (2006). It does not "set forth a general civility code for the American workplace," nor does it seek to insulate employees from "petty slights, minor annoyances, and simple lack of good manners." *Id*; *see also Welzel v. Bernstein*, 436 F. Supp. 2d 110, 122 (D.D.C. 2006)(holding that Title VII was intended to protect opposition to civil rights violations not "unprofessional and abusive behavior" by supervisors). Clearly then, plaintiff's complaints about Blair's attitude do not rise to the level of statutorily protected activity. Accordingly, plaintiff cannot make out a *prima facie* case of retaliation.

Moreover, even assuming, *arguendo*, that plaintiff had engaged in protected activity, the defendant has offered a "legitimate, non-discriminatory" reason for her dismissal. Indeed, Blair averred that McMillan was technically weak in basic accounting principles and performed poorly during her formal training. Blair Decl., ¶ 9-11. Although she was assigned a remedial self-study program to correct these weaknesses,

Blair asserts that plaintiff failed to complete the program. *Id* at ¶ 11. Moreover, Blair testified that McMillan had performed poorly on several bank examinations during her year on the job, receiving "marginal" evaluations from the Examiners-in-Charge to whom she was assigned. *Id* at ¶ 15-17. According to Blair, it was this poor performance, not her complaints about his attitude, that resulted in her firing. As McMillan has offered no evidence of pretext, the Court must GRANT summary judgment for the defendant on plaintiff's retaliation claim.

### B. Discrimination Claim

In addition to her claim of retaliation, it appears that McMillan is also claiming that she was terminated on account of her race. As evidence of this discrimination, McMillan points out that a white trainee ("the other trainee" or "the white trainee"), who she contends experienced similar difficulties throughout the training program was not fired. Defendant has moved for summary judgment of this claim, arguing, as above, that McMillan was fired because of her poor work performance. Once again, the Court agrees.

In order to make a *prima facie* case of discrimination, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843 (D.C. Cir. 2006); *George v. Leavitt*, 407 F.3d 405, 412 (D.C.Cir. 2005); *Stella v. Mineta*, 284 F.3d 135, 145 (D.C.Cir. 2002).

One way a plaintiff can show that an adverse action was the result of discrimination is by demonstrating that she was treated less favorably than similarly situated employees who are not part of plaintiff's protected class or classes. *See George v. Leavitt*, 407 F.3d at 412. A plaintiff who makes such a claim, however, bears the burden of proving that the other employees are in fact similarly situated to plaintiff. *See Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir. 1999). Indeed, a plaintiff must demonstrate "that all of the relevant aspects of his employment situation were nearly identical" to those of the employee who is not a member of the protected class. *Id.*

Here, plaintiff has failed to demonstrate that she was similarly situated to the white trainee. Plaintiff came to the agency shortly after graduating from college and was hired as an "Examiner Trainee," a position which, as noted above, included a probationary period of one year. The other trainee, by comparison, was a lateral transfer to the agency with fourteen years of federal work experience and was hired as a permanent employee. As a result, in August 2002, the defendant had to decide whether to retain McMillan as a permanent employee. In the case of the other trainee, however, that decision had already been made.

Our Circuit Court has clearly held that probationary trainees are not similarly situated to permanent employees when the decision to retain or dismiss the probationary employee is made. *Holbrook*, 196 F.3d at 262; *McKenna v. Weinberger*, 729 F.2d 783, 789-90 (D.C. Cir. 1984); *Rhodes v. Chertoff*, No. Civ.A. 04-1715 RMC, 2005 WL

3273566, *6 (D.D.C. 2005). Moreover, federal regulations require that an agency "*shall* utilize the probationary period as fully as possible to determine the fitness of the employee and *shall terminate* the services during this period if [the employee] fails to demonstrate fully [her] qualifications for continued employment." 5 C.F.R. § 315.803 (emphasis added). In the case of permanent employees, no such decision is required. As a result, although McMillan and the other trainee may have participated in similar training and may have experienced similar difficulties, they were clearly not similarly situated when the decision was being made to retain or dismiss the plaintiff. Accordingly, McMillan cannot prove a *prima facie* case of discrimination on this record.[2] Accordingly, defendant's motion for summary judgment of plaintiff's discrimination claim must also be GRANTED.

### III. CONCLUSION

For the above stated reasons, defendant's motion for summary judgment is GRANTED.

    *[signature]*
    RICHARD J. LEON
    United States District Judge

---

[2] Furthermore, as noted above, even assuming *arguendo* that McMillan had established a *prima facie* case, defendant has offered compelling evidence that plaintiff was fired because of her poor work performance. As our Circuit Court has held, plaintiff must offer more than "her own speculations and allegations to refute the . . . legitimate, non-discriminatory reasons for [the employer's] decisions." *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999).